**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:15-CR-00093-GCM-DCK**

| | |
|---|---|
| USA, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| DIANDRE HAKEEM GRIFFIN, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**THIS MATTER** is before the Court on Defendant Diandre Hakeem Griffin's Motion to Suppress (Doc. No. 10), the Government's Response in Opposition (Doc. No. 23), Magistrate Judge David Keesler's Memorandum and Recommendation (Doc. No. 23), Defendant's Objections (Doc. No. 48), and the Government's Response (Doc. No. 49). For the following reasons, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**, the Memorandum and Recommendation is **ACCEPTED**, and the Objections to the Memorandum and Recommendation are **OVERRULED.**

### I. BACKGROUND

On April 22, 2015, Defendant was charged in a bill of indictment with one count of possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 924(g)(1). (Doc. No. 1) Defendant filed a Motion to Suppress physical evidence against him and statements made to investigating officers, asserting the following arguments: (1) they had been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and the Fifth Amendment (Doc. No. 10 at 7-9, 10-12); (2) the statements were involuntary, and thus inadmissible under the Fifth and Sixth Amendments (*id.* at 9-10); (3) consent to search

Defendant's apartment was not voluntary, thus the search itself was invalid (*id.* at 12-13); (4) both the statements and physical evidence recovered by the officers constitute "fruit of the poisonous tree" (*id.* at 13-14). Subsequently, on November 18, 2015, he was charged in a superseding bill of indictment with one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 924(g)(1), and one count of receipt of a firearm not registered to him, in violation of 26 U.S.C. §§ 5841, 5845(a)(1), 5861(d), and 5871. (Doc. No. 26)

A hearing on Defendant's Motion was held before Magistrate Judge Keesler on January 11 and January 12, 2016.[1] (Doc. No. 30, 31) On March 7, Judge Keesler issued a Memorandum and Recommendation, recommending that Defendant's Motion be granted in part and denied in part. (Doc. No. 35) Specifically, Judge Keesler found that Defendant's statements made to investigating officers at his girlfriend, DeVonda Shannon's, home prior to his arrest were voluntary, as was his consent to a search of the house. (*Id.* at 11-17) Next, Judge Keesler concluded that Defendant's statements at the house were not made in violation of *Miranda* because Defendant was not in custody when the statements were made. (*Id.* at 18-24) By contrast, when Defendant was transported to the Monroe Police Department for questioning, he invoked his right to counsel, and thus that statements he made after that point should be suppressed. (*Id.* at 24-29) Finally, Judge Keesler determined that Defendant's statements after his transport to the Union County Jail constituted a separate interaction, untainted by the previous *Miranda* violation. (*Id.* at 29-32) In sum, Judge Keesler recommended that this Court

---

[1] Due to technological difficulties, substantial portions of the hearing transcript were designated as "inaudible," and as a result, Chief Judge Whitney ordered the parties to meet and confer on a joint transcript of the proceedings. (*See* Doc. No. 32, 33) On June 3, 2016, the parties filed Joint Supplemental Transcripts in accordance with that order, which the Court has used to review the evidence. (Doc. No. 45, 46)

2

grant Defendant's Motion in part, and suppress statements made after Defendant's invocation of the right to counsel at the police station, but deny the Motion in all other respects. (*Id.* at 32)

On June 13, 2016, Defendant timely filed his objections to the Memorandum and Recommendations. (Doc. No. 48) On June 20, 2016, the government filed its Response. (Doc. No. 49) Accordingly, Defendant's Motion is now ripe for disposition.

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Rule 59(b)(1) of the Federal Rules of Criminal Procedure. The Court must consider any objection to the magistrate judge's recommendation *de novo*. Fed. R. Crim. P. 59(b)(3). When no objection is made, however, the Court need "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, 1983 Advisory Committee Note). "Similarly, *de novo* review is not required by the statute 'when a party makes general or conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations.'" *Rhodes v. Mun. Emergency Servs., Inc.*, No. 3:14-CV-00314-MOC-DS, 2014 WL 6808666, at *1 (W.D.N.C. Dec. 2, 2014) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

## III. FACTUAL BACKGROUND

Defendant makes several objections to the factual background set out in the Magistrate Judge's Report and Recommendation. First, he objects to the procedural history on the grounds that it omits mention of the Superseding Indictment, in which Defendant was charged with an additional offense. (Objections at 3, ¶ 1, Doc. No. 48) The Court agrees that the Memorandum

3

and Recommendation does not mention the Superseding Indictment, but finds that the omission is immaterial to the merits of Defendant's Motion. Accordingly, this objection is overruled.

Second, Defendant objects to several facts contained in the Magistrate Judge's factual background, which he contends are not supported by the evidence adduced at the hearing, but rather were taken from the pleadings. (*Id.* at 3-5, ¶ 2) Specifically, Defendant objects that the Memorandum and Recommendation includes details from calls that the police listened to before deciding to approach Griffin and the distance one police vehicle was parked from the residence where the search took place. (*Id.*) He also objects that the Factual Background describes an interaction as occurring "without discussion," when one of the officers described a brief answer. (*Id.*) However, although Defendant appears to be correct, the discrepancies again have no bearing on the merits of his Motion. None of the identified facts are relevant to whether Defendant faced custodial interrogation, made voluntary statements, or invoked his right to counsel.

Moreover, evidence adduced at the hearing established that the officers had reviewed the police tapes, learned Defendant had picked up a bag belonging to a murder suspect, and decided to engage Defendant in a knock and talk to gather more information for their investigation. (Doc. No. 45 at 44, 53-57, 59, 69; Doc. No. 46 at 5-7, 28-29, 42-45) Additionally, evidence was presented that the disputed police vehicle was parked "on an adjacent street," and that when approaching the house two unmarked police vehicles were visible nearby. (Doc. No. 46 at 77, 94) Thus, the Memorandum and Recommendation accurately described the material circumstances of Defendant's conversation with law enforcement and ultimate arrest, even if some specifics appeared only in the pleadings.

Third, Defendant objects to following statement from the Factual Background: "Blackman cautioned Defendant that Defendant 'did not want to get caught up in a murder investigation,' and he revealed to Defendant what he had overheard on the jail call. Defendant then admitted that he had retrieved the book bag, that the bag contained a shotgun, and that the gun was in the residence." (Objections at 5-6, ¶ 3, Doc. No. 48) Defendant claims, without citation to the hearing transcript, that he made no admissions until after he was promised he "would not be charged with anything." (*Id.*) However, Special Agent Blackman testified at the hearing that Defendant was told he did not want to get caught up in a murder investigation, and subsequently made the admissions cited in the Memorandum and Recommendation. (Doc. No. 47 at 12) Both officers also denied promising not to charge Defendant. (Doc. No. 46 at 20, 43-44; Doc. No. 45 at 74).

The Court reviews the Magistrate Judge's findings of fact, especially those based on credibility determinations, with great deference. *United States v. Brooks*, No. CRIM. 1:05CR248-1, 2006 WL 695079, at *1 (W.D.N.C. Mar. 15, 2006) (quoting *McNairn v. Sullivan,* 929 F.2d 974, 977 n. 3 (4th Cir. 1991)). And in reviewing the testimony from the hearing, the Court finds that the evidence presented supports the finding that Special Agent Blackman told Defendant he "did not want to get caught up in a murder investigation," and that immediately after, Defendant admitted both that he had picked up a bag belonging to the murder suspect and that it contained a gun. (Doc. No. 46 at 12-13, 42-49) Thus, Defendant's objection to that statement is overruled.

Finally, Defendant objects to the following statement in the Factual Background: "Blackman allegedly told Ms. Shannon that they were going to enter a bedroom to retrieve a shotgun that was within. Ms. Shannon became agitated, and said something to the effect of

'there better not be a shotgun in this house.'" (Objections at 6, ¶ 4, Doc. No. 48) Defendant argues that Ms. Shannon's recollection of the interaction did not include this detail. (*Id.*) However, Special Agent Blackman testified that the quoted conversation took place (Doc. No. 46 at 14), and the Magistrate Judge sitting as a trier of fact was permitted to credit it. In any event, the conversation between Special Agent Blackman and Ms. Shannon is unrelated to the voluntariness of Defendant's statements and consent to search the residence, thus any disparity between his testimony and Ms. Shannon's on this point is irrelevant. Thus, Objection Four is overruled.

## IV. DISCUSSION

Defendant also makes eight objections to the discussion section of the Memorandum and Recommendation.[2] (Objections at 8-17, ¶¶ 7-15) The Court will address each in turn.

### A. Fifth Amendment voluntariness

Defendant argues in his Motion to Suppress that his confession to the police that he had obtained the bag belonging to their murder suspect, and that it contained a sawed off shotgun, was involuntary because it occurred after Special Agent Blackman promised not to charge him with any crime. (Motion to Suppress at 9-10, Doc. No. 10) Defendant also argues that, for the same reason, he did not voluntarily give consent for the officers to search the residence. (*Id.* at 12-13) The Magistrate Judge found that Defendant's confession and consent were not involuntary within the meaning of the Fifth Amendment. (Memorandum and Recommendation at 11-17) Consequently, Defendant now objects to several of the Magistrate Judge's findings related to that conclusion.

---

[2] Objection 16 simply states that Defendant objects to the Magistrate Judge's Conclusion and Recommendation "for all the reasons set forth in Defendant's previously filed Motion to Suppress." (Objections at 17, ¶ 16, Doc. No. 48) This conclusory objection does not require *de novo* review. *Rhodes*, 2014 WL 6808666, at *1. Further, for the reasons that each of Defendant's specific objections are overruled, Objection 16 is without merit.

Specifically, Defendant objects to the following findings in the Memorandum and Recommendation: (1) Defendant's confession was based on Special Agent Blackman's statement that Defendant should talk to the officers because he "didn't want to get caught up in a murder investigation" (Objections at 6-7, ¶ 5, Doc. No. 48); (2) there is "no basis" for finding that Special Agent Blackman's promise was a direct promise not to charge Defendant (*Id.* at 7-8, ¶ 6); (3) Defendant could not reasonably have construed Special Agent Blackman's statement as an indirect promise not to charge him (*Id.* at 8-9, ¶ 7); (4) even if the statement could be construed as an indirect promise, it was not the "principal and determinative factor" leading to Defendant's statements and consent (*Id.* at 9, ¶ 8); (5) because Defendant knew that he had committed a felony by possessing the shotgun, he could not reasonably have believed cooperation would prevent the officers from bringing charges against him (*Id.* at 9-10, ¶ 9); and (6) because Defendant's statements and consent were voluntarily given, his remarks and the shotgun are admissible (*Id.* at 10-11, ¶ 10).

Defendant contends that the record evidence demonstrates that his confession was based on Special Agent Blackman's promise not to charge him. (*Id.*) Defendant cites three pieces of circumstantial evidence in support of this argument: (1) Defendant's angry response to the *Miranda* waiver he received at the Monroe Police Department; (2) his refusal to sign that waiver; and (3) Detective Brummer's response of "Yeah, I'm with you," when Defendant claimed at the Union County Jail that he had been told he would not be charged. (*Id.*)

After reviewing the evidence presented at the hearing, the Court agrees with the Magistrate Judge's findings that Defendant was told he "didn't want to get caught up in a murder investigation," and that this statement could not reasonably be construed as a direct or indirect promise not to charge Defendant. (Doc. No. 46 at 12) This statement constituted a discussion

7

about cooperation, and could not reasonably be construed as a direct or indirect promise not to charge him. *See United States v. Holmes*, 670 F.3d 586, 592-93 (4th Cir. 2012) ("'[A] law enforcement officer may properly tell the truth to the accused.' Numerous cases reiterate that statements by law enforcement officers that are merely 'uncomfortable' or create a 'predicament' for a defendant are not *ipso facto* coercive." (citation omitted)).

Moreover, Defendant's confession and consent were given directly after Special Agent Blackman told Defendant he had listened to recorded phone calls in which Defendant admitted assisting the suspect of a murder investigation. (Doc. No. 46 at 12) This evidence, as the Magistrate Judge pointed out, suggests that the principal factor leading Defendant to assist law enforcement was to mitigate the consequences of that action. (Memorandum and Recommendation at 15-16, Doc. No. 35) Similarly, because of Special Agent Blackman's comments, Defendant was aware that the officers knew about his involvement with a murder suspect. Accordingly, Defendant could not reasonably believe, particularly at an early stage of the officers' investigation, that he had been offered a blanket promise that the officers would bring no criminal charges against him. (*Id.* at 15)

Nevertheless, Defendant cites *United States v. Shears*, 762 F.2d 397, 401 (4th Cir. 1985), for the proposition that "a confession may be involuntary if 'obtained by any direct or implied promises, however slight, or by the extension of any improper influence.'" (Objections at 7, ¶ 5, Doc. No. 48) However, it is well established that "despite this broad language, the cases indicate that government agents may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary." *Shears*, 762 F.2d at 401. Indeed, "[t]he proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." *Holmes*, 670 F.3d at 591. Here, there is no evidence

that Defendant's will was overborne in his conversation with law enforcement at Ms. Shannon's residence.

The Court has also reviewed all of the circumstantial evidence that Defendant presents to support his position. The record contains sufficient evidence to support the Magistrate Judge's findings that Defendant did not receive a direct or indirect promise from the officers. To begin with the Magistrate Judge was in the best position to evaluate the credibility of the testifying officers as to their conversation with Defendant prior to his confession, and both testified that they had made no promise to Defendant. (Doc. No. 46 at 20, 43-44; Doc. No. 45 at 74) Finally, as the Magistrate Judge correctly pointed out, other circumstantial evidence casts doubt on Defendant's argument. For example, Defendant ultimately signed the *Miranda* waiver (Doc. No. 45 at 25), and Detective Brummer's comment at the Union County Jail can reasonably be construed as an ordinary attempt to build a rapport with Defendant. (Memorandum and Recommendation at 16-17, Doc. No. 35) Indeed, Detective Brummer testified at the hearing that this had been his intent. (Doc. No. 45 at 42-43)

In sum, the Court's review of the record, as well as Defendant's objections, reveal no error in the Magistrate Judge's analysis of whether Defendant's statements and consent were voluntarily given. For this reason, Objections 5 through 10 will be overruled.

**B. Miranda violations at residence**

Defendant also raises several objections to the Magistrate Judge's finding that he was not owed *Miranda* warnings when questioned at Ms. Shannon's residence because he was not in custody. First, Defendant objects to the Magistrate Judge's finding that Defendant was not prevented from leaving the house, and thus that he was not in custody. (Objections at 11-12, ¶ 11, Doc. No. 48) Custody for *Miranda* purposes requires that there was "a 'formal arrest or

9

restraint on freedom of movement' of the degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 100 (2013) (citations omitted). A determination of custody is shaped by factors such as the suspect's isolation and separation from family, "the time, place and purpose of the encounter . . . the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *United States v. Day*, 591 F.3d 679, 696 (4th Cir. 2010) (quoting *United States v. Weaver*, 282 F.3d 302, 312 (4th Cir. 2002) (internal quotation marks omitted)). Defendant contends that a reasonable person would have believed that he had been functionally arrested because there with three police officers who spoke with Defendant, and they spoke with him inside of a police car. (Objections at 11-12, ¶ 11, Doc. No. 48).

However, the evidence presented at the hearing established that Defendant consented to speak with the police officers in their car due to the cold weather, and that he entered and exited the vehicle by himself. (Doc. No. 46 at 13, 41; Doc. No. 45 at 11-12). The purpose of the encounter was to interrogate, not arrest, Defendant, and the encounter lasted less than ten minutes. (Doc. No. 45 at 88, 96, 97; Doc. No. 46 at 13). Further, Defendant voluntarily stepped out onto the porch and went with the officers to the car (Doc. No. 45 at 64-65; Doc. No. 46 at 9-10), and there is no evidence that either officer displayed a weapon or made physical contact with him. Indeed, even when Defendant was taken to the Monroe Police Department, both officers testified that he walked to the police car and got in without being handcuffed or touched. (Doc. No. 45 at 77; Doc. No. 46 at 15-16) Thus, there is no basis for finding that Defendant's movement was so restrained that he was in custody, and Objection 11 is overruled.

Defendant next objects to the Magistrate Judge's finding that there was insufficient evidence to find that the officers subjectively believed that Defendant had committed a crime,

and would not have allowed him to leave. (Objections at 12-13, ¶ 12, Doc. No. 35) He also objects to the related finding that, even if the officers subjectively believed Defendant had committed a crime, it does not necessarily follow that he was in custody. (*Id.*) Defendant contends that the police officers subjectively believed Defendant had committed a crime because Special Agent Blackman knew that Defendant had past criminal charges and surmised that there may have been a gun in Defendant's bag. (*Id*. at 13). However, as Judge Keesler explained, Agent Blackman testified that he did not know whether any of Defendant's criminal charges had resulted in convictions (Doc. No. 46 at 38), and that he did not have any particular suspicion that the black bag contained a weapon (Doc. No. 46 at 45).

Further, even if the officers suspected the encounter would end in an arrest, such suspicion is "of little weight," and "[t]he relevant inquiry is how a reasonable man would have understood the suspect's position at the time." *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001). Here, then, even if the officers subjectively intended to prevent Defendant from leaving the premises, their subjective intent would not require a finding that Defendant was in custody. (Memorandum and Recommendation at 23, Doc. No. 35) In this instance, the evidence does not establish that a reasonable person would have believed himself in custody, and thus Defendant's objection is overruled.

Finally, Defendant objects to the Memorandum and Recommendation's conclusion that, because he was not in custody during his questioning at Ms. Shannon's residence, his statements need not be suppressed. (Objections at 13-14, ¶ 13 Doc. No. 48) However, as the Court has explained, there are no grounds for finding that the officers' questioning amounted to custodial interrogation. Thus, they were not required to provide *Miranda* warnings. Accordingly, Objection 13 is overruled.

### C. Miranda violations at Union County Jail

Defendant also asserts that his statements to Detective Brummer at the Union County Sherriff's Office must be suppressed because his *Miranda* rights were violated at the Monroe Police Department, and the two interrogations were continuous. First, Defendant objects to the Magistrate Judge's finding that he waived his rights by consenting to speak to Detective Brummer. (Objections at 14-15, ¶ 14, Doc. No. 48) However, law enforcement may resume questioning a suspect who has invoked his right to counsel provided that "the accused himself initiates further communication, exchanges, or conservations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Here, Defendant invoked his right to counsel at the Monroe Police Department, but requested to speak with Detective Brummer after his transfer to Union County Jail. (Doc. No. 45 at 22-24, 84-88) By reaching out to Detective Brummer, Defendant waived his *Miranda* rights prior to the Union County Jail interrogation. Additionally, at that time Defendant signed a *Miranda* waiver and repeatedly stated that he was understood that he was waiving his rights. (*Id.* at 86) For these reasons, the Magistrate Judge's finding is supported by the record evidence, and Objection 14 is overruled.

Finally, Defendant objects to the Magistrate Judge's finding that the Monroe Police Department and Union County Sherriff's Office interrogations constituted separate interactions. (Objections at 15-17, ¶ 15, Doc. No. 48) "When Miranda warnings are inserted in the midst of coordinated and continuing interrogation," and such warnings fail to "reasonably convey to a suspect his rights," a suspect's statements may be suppressed despite formal compliance with *Miranda. Missouri v. Seibert*, 542 U.S. 600, 610-11, 613-14 (2004) (citations omitted). To determine whether a subsequent interrogation was "coordinated and continuing," a court should consider: "the completeness and detail of the questions and answers to the first round of

questioning, the two statements' overlapping content, the timing and setting of the first and second rounds, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 601-602.

Here, Magistrate Judge Keesler found that (1) Defendant was not asked complete or detailed questions; (2) there was not a sufficient overlap in the content of Defendant's two statements; (3) there was not a substantial continuity of police personnel across the two interrogations; and (4) the interrogations did not appear continuous because they were conducted in a different location by different personnel. (Memorandum and Recommendation at 30-31, Doc. No. 35) The evidence presented at the hearing supports these findings. (*See* Doc. No. 45 at 22, 79-86)

Although Defendant argues that the Monroe Police Department interrogation occurred at 10:04 a.m. and the Union County Jail interrogation occurred at 12:58 p.m., there is no evidence that a nearly three hour gap between the interrogations establishes that they were coordinated and continuing. (Objections at 16, ¶ 15, Doc. No. 48) Additionally, while Defendant argues that in both interrogations "the subject matter was the homicide case and the black bag including its contents, a gun" (*id.*), this is a broad description of Defendant's relationship to the officers' ongoing investigation, and does not support the finding that Defendant's two statements substantially overlapped in content. Indeed, Defendant refused to engage with officers during the first interaction when they presented him with the waiver (*See* Doc. No. 46 at 67-70), and cooperated during the second. (Doc. No. 45 at 19, 85-86) Thus, the evidence supports the Magistrate Judge's finding that the two interrogations were not so coordinated and continuous that the *Miranda* violation from the Monroe Police Department interrogation invalidated the Union County Sherriff's Office interrogation. Accordingly, Objection 15 will be overruled.

13

## V. CONCLUSION

For the foregoing reasons, Defendant's objections to the Memorandum and Recommendation lack merit. **IT IS, THEREFORE, ORDERED** that the Defendants' Objections to the Memorandum and Recommendation (Doc. No. 48) are **OVERRULED**; the Magistrate Judge's Memorandum and Recommendation (Doc. No. 35) is **ACCEPTED**; and the Motion to Suppress (Doc. No. 10) is **GRANTED IN PART AND DENIED IN PART.**

Signed: July 5, 2016

Graham C. Mullen
United States District Judge